UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| COLLEEN HOPKINS,<br>KATHRYN DiSALVO,<br>DOUGLAS MORRIS, Executor of the<br>Estate of Margaret Morris,<br>Plaintiffs,<br><br>v.<br><br>JOHN S. BOOTH, III,<br>Defendant. | **REPORT**<br>**and**<br>**RECOMMENDATION**<br>**------------------------------**<br>**DECISION**<br>**and**<br>**ORDER**<br><br>**16-CV-1020V(F)** |

_____

APPEARANCES:            JULES ZACHER, P.C.
                        Attorneys for Plaintiffs
                        JULES ZACHER, of Counsel
                        1601 Walnut St., Suite 707
                        Philadelphia, Pennsylvania 19102

                        BURGETT & ROBBINS
                        Attorneys for Plaintiffs
                        ROBERT A. LIEBERS, of Counsel
                        15 E. Fifth Street
                        Jamestown, New York 14701


                        GOLDBERG SEGALLA LLP
                        Attorneys for Defendant
                        JOSEPH J. WELTER,
                        JASON BOTTICELLI, of Counsel
                        665 Main Street, Suite 400
                        Buffalo, New York 14203


## JURISDICTION

This matter was referred to the undersigned by order of Hon. Lawrence J. Vilardo

on August 21, 2017 (Dkt. 13) for all pretrial matters.  It is presently before the court on

Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") filed

August 4, 2017 (Dkt. 10), and Defendant's request to strike Plaintiffs' counsel's

declaration and other exhibits which were included in Defendant's Reply filed August 30, 217 (Dkt. 15).[1]

# BACKGROUND

Plaintiffs' complaint, based on diversity, alleging negligence (Count I), negligence *per se* (Count II), wrongful death (Count III), survival damages (Count IV) and punitive damages (Count V), was filed December 21, 2016.  In lieu of answer, Defendant filed, pursuant to Rule 12(b)(6), the instant motion on August 4, 2017 (Dkt. 10) to dismiss Plaintiffs' Counts II, III, IV, and V (Dkt. 10) ("Defendant's motion") together with the Memorandum of Law In Support of Defendant's Motion to Dismiss Counts II, III, IV, and V of Plaintiffs' Complaint pursuant to Rule 12(b)(6) (Dkt. 10-1) ("Defendant's Memorandum").  On August 8, 2017, Plaintiffs filed a Memorandum of Law In Opposition To Defendant's Motion To Dismiss Counts II, III, IV and V Of Plaintiffs' Complaint (Dkt. 11) attaching as Exhibit 1, the Declaration of Jules Zacher, Esq. (Dkt. 11-1) ("Zacher Declaration"), and a volume of exhibits (Dkt. 11-2) containing, *inter alia,* Exhibit 2 (New York State Department of Health Record ("N.Y.S. Dep't of Health Record")), Exhibit 3 (Allegany County Department of Health Letter dated September 29, 2016 ("County Dep't of Health Letter")), Exhibit 4 (copy of a death certificate for Margaret D. Morris ("Morris Death Certificate"), Plaintiff Douglas Morris's decedent), and Exhibit 5 (copy of Plaintiffs' 1st Amended Complaint ("the Amended Complaint")) ("Plaintiffs' Exh(s). __").  On August 30, 2017, Defendant filed a Reply Memorandum Of

---

[1]  Defendant's motion to dismiss is dispositive and Defendant's request to strike is non-dispositive. However, for convenience, both are addressed in this Report and Recommendation and Decision and Order.

Law In Further Support Of Defendant's Motion To Dismiss Portions Of Plaintiffs'
Complaint Pursuant To Fed.R.Civ.P. 12(b)(6) (Dkt. 15) ("Defendant's Reply"). Oral
argument was deemed unnecessary. Based on the following, Defendant's motion
should be GRANTED in part, and DENIED in part; Defendant's request to strike is
GRANTED.

## FACTS[2]

Between August 29 and September 4, 2016, Plaintiffs Kathryn DiSalvo
("DiSalvo"), a Pennsylvania resident, and Colleen Hopkins ("Hopkins"), a resident of
Delaware, and Margaret Morris ("Morris") ("Plaintiffs"),[3] then a Delaware resident,
stayed at Defendant's property on Cuba Lake, called the Lakehouse, located at 311
North Shore Road in Cuba, New York ("Defendant's premises" or "Defendant's
property" or "the Lakehouse"). During their stay at the Lakehouse, Plaintiffs contracted
a respiratory infection later diagnosed as Legionnaires' disease[4] as a result of Plaintiffs'
use of water at the Lakehouse and the use of or exposure to a hot tub located below a
second-story porch of the Lakehouse which Defendant made available for Plaintiffs'
use. Plaintiffs DiSalvo and Hopkins allege they used the hot tub; it is alleged that Morris
was exposed to the steam and vapor created by the use of the hot tub while on the

---

[2] Taken from the pleadings and papers filed in the action.
[3] Unless indicated otherwise, all references to DiSalvo, Hopkins, Morris, and Morris's estate are referred to as "Plaintiffs"; Plaintiff Morris's estate is referred to as "Morris."
[4] Legionnaire's disease "is a serious, potentially lethal, and increasingly common form of bacterial pneumonia . . . caused by exposure to a ubiquitous waterborne bacterium of the genus Legionellae . . . first discovered in 1976." Thomas P. Bernier and Susan E. Smith, LESSONS LEARNED FROM LEGIONNAIRES' DISEASE LITIGATION – THE STANDARD OF CARE DEFENSE IN EMERGING TOXIC TORT CLAIMS, 56 No. 4 DRI for Defendant, Apr. 2014 at 2; "Legionnaires' . . . disease is a very serious type of pneumonia (lung infection) caused by bacteria called *Legionella* . . . . "In man-made settings, *Legionella* can grow if water is not properly maintained . . . [which] become a health problem when small droplets of water that contain the bacteria get into the air and people breath them in." U.S. Department of Health and Human Service Centers for Disease Control and Prevention, www.cdc.gov/legionella (7/18/2016).

Lakehouse porch above the tub containing the *Legionella* bacteria.  During early September 2016, shortly after their stay at the Lakehouse, Plaintiffs were diagnosed with symptoms consistent with Legionnaires' disease including shortness of breath, chills, nausea, chest pain, headaches, and fever from which DiSalvo and Hopkins eventually recovered; however, following several days of intensive medical treatments, Morris expired on September 15, 2016 at a Wilmington, Delaware hospital.  Morris's son, Douglas, was subsequently appointed executor of her estate as a plaintiff in this action.  As a result of Plaintiffs' alleged exposure to the Legionnaires' disease bacteria while on Defendant's property, Plaintiffs suffered serious pain and suffering including significant medical bills and future treatment for Plaintiffs DiSalvo and Hopkins.

In Defendant's motion, Defendant contends Plaintiffs' Count II fails to state a claim for negligence *per se* under applicable New York law, based on a stated New York State Department of Health regulation covering hot tubs operated by businesses, 10 N.Y.C.R.R. § 6-1.25, ("§ 6-1.25"), as under New York law[5] a claim of negligence *per se* may not be based on an administrative regulation.  Defendant's Memorandum (Dkt. 10-1) at 7.  Defendant further contends Plaintiff ~~Douglas~~ Morris's Count III improperly seeks both pecuniary and non-pecuniary damages, *i.e.*, pain and suffering, beyond the scope of damages available in a wrongful death action as permitted under N.Y. Est. Powers & Trusts Law § 5-4.3 ("§ 5-4.3") (McKinney's 1986) (compensation for distributees limited to "pecuniary injuries resulting from the decedent's death"), and that Count III fails to allege that the allowable pecuniary expenses had been paid by the distributees.  Dkt. 10-1 at 7-9.  Defendant also asserts Count IV for "survival damages"

---

[5]   The parties do not dispute that New York law applies to all substantive issues in this diversity action.

based on N.Y. Est. Powers & Trusts Law § 11-3.1 fails to state a cognizable claim under New York law as alleged by Plaintiffs which statute by its terms is inapplicable to personal injury claims.  *See* N.Y. Est. Powers & Trusts Law § 11-3.1 ("Any actions <u>other</u> <u>than</u> <u>an</u> <u>action</u> <u>for</u> <u>injury</u> <u>to</u> <u>person</u> or property, may be maintained by and against a personal representative in all cases and in such manner as such action might have been maintained by or against his decedent.") [6] (underlining added).[7]  Finally, Defendant maintains that Plaintiffs' Count V seeking punitive damages must also be dismissed as New York does not recognize a separate claim for such damages, and in any event Plaintiffs' Count V insufficiently alleges either malice, willful and wonton misconduct or gross negligence required under New York law to support any award of punitive damages ("Defendant's motion").

Plaintiffs responded to Defendant's motion by filing on August 8, 2017, pursuant to Fed.R.Civ.P. 15(a)(1)(B) ("Rule 15(a)(1)(B)") (permitting an amended pleading within 21 days after the initial pleadings in the absence of a responsive pleading), Plaintiffs' 1st Amended Complaint (Dkt. 12) ("the Amended Complaint"), in which Plaintiffs (1) delete Plaintiffs' Count V and, instead, add allegations in support of Plaintiffs' request for punitive damages (Dkt. 12 ¶ 24) to Plaintiffs' Count I alleging negligence and Count II alleging negligence *per se*, (2) reallege Plaintiffs' Count II asserting negligence *per se* based on Defendant's violation of N.Y. Pub. Health Law § 225 (McKinney's 2011)

---

[6]  To the extent Morris may have suffered conscious pain and suffering such damages would be recoverable by Morris's estate within the scope of Plaintiffs' Counts I and II.  *See* N.Y. Est. Powers & Trusts Law § 11-3.2(b) (personal injury action survives death of plaintiff and may be brought or continued by plaintiff's representative); *Heslin v. County of Greene*, 923 N.E.2d 1111, 1115 (N.Y. 2010) (personal injury action for conscious pain and suffering survives death of plaintiff and damages accrue to plaintiff's estate).  A separate action for "survival damages" is unnecessary.
[7]  Unless indicated otherwise all underlining is added.

("§ 225") which provides the statutory authority for § 6-1.25,[8] Defendant's alleged

violation of which Plaintiffs continue to contend, Plaintiffs' Memorandum, Dkt. 11, at 6,

adequately supports Plaintiffs' negligence *per se* claim under New York law as alleged

in Plaintiffs' Count II, (3) reallege Plaintiffs' Count III (wrongful death) limited to a claim

for pecuniary damages for Morris's distributees and, (4) delete Plaintiffs' Counts IV

(alleging survival damages) and V (alleging a separate claim for punitive damages).

In Defendant's Reply, Defendant continue to argue that Plaintiffs' Count II

(negligence *per se*) is insufficient in that under New York law negligence *per se* cannot

be solely predicated on a violation of regulations promulgated pursuant to a statute, and

Plaintiffs' reliance in Count II of the Amended Complaint on § 225 is misplaced as the

statute includes no standards for the maintenance and safety of water systems or hot

tubs, the violation of which could, under applicable New York law, support a claim of

negligence *per se*.  Dkt. 15 at 1-3.[9]  Defendant further contends Plaintiffs' attempt to

include a punitive damages claim in Plaintiffs' Count I (negligence) of the Amended

Complaint is nevertheless defective in that Plaintiffs' allegations in support of any

punitive damage award are insufficiently factual and lack sufficient indicia of wanton

conduct or gross negligence required under New York law to support a claim for

punitive damages and thus, under federal law as applicable to a Rule 12(b)(6) motion,

*see Tianbo Huang v. iTV Media, Inc.* 13 F.Supp.3d 246, 254 (E.D.N.Y. 2014) (Rule

12(b)(6) applies to motions to dismiss in diversity actions), rendering Plaintiffs' punitive

---

[8]  10 N.Y.C.R.R. § 6-1.25(a) requires all spa pools to comply with the stated pH and chlorination levels established by 10 N.Y.C.R.R. § 6-1.25(c) and imposes bi-weekly draining and cleaning requirements set forth in 10 N.Y.C.R.R. § 6-1.25(d).

[9]  In the interest of judicial economy and to avoid unnecessary further motion practice directed to the Amended Complaint which Defendant has not specifically challenged in a separate Rule 12(b)(6) motion, the court treats Defendant's Reply as a part of Defendant's motion to dismiss directed to Plaintiffs' Counts I, insofar as it requests punitive damages, and II, as alleged in the Amended Complaint.

damage request implausible, requiring dismissal.  Dkt. 15 at 4-6.  Finally, Defendant objects to Plaintiffs' inclusion of Plaintiffs' Exhibits 1-5 in Plaintiffs' opposition, Dkt. 11-2, to Defendant's motion as not referenced in the Amended Complaint, and therefore requests the exhibits be stricken.[10]

## DISCUSSION

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Id.* (quoting *Iqbal*, 556 U.S. at 670).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[10]  Although Defendant's request to strike is not in the form of a motion, the court considers it as such, and Plaintiffs have had sufficient time to respond but, to date, have not done so.

inference that the defendant is liable for the misconduct alleged.' " *Sykes v. Bank of America,* 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face"). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

"In ruling on a 12(b)(6) motion, ... a court may consider the complaint as well as 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.' " *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology, Inc.*, 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001)). "Moreover, 'on a motion to dismiss, a court may consider ... matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' " *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).[11]

Here, the parties agree that the Amended Complaint has rendered moot Defendant's challenges to Morris's wrongful death claim (Count III), as originally pleaded in Plaintiffs Morris's Count III of the Complaint, as Morris no longer seeks non-pecuniary damages. *See* Defendant's Reply at 1; Plaintiffs' Memorandum at 4 (requesting denial of Defendant's motion as to Count III as moot). Further, as the Amended Complaint deletes any reference to Morris's Count IV alleging a claim for survival damages, and Count V alleging a separate punitive damages claim,

---

[11]   Bracketed material in original; unless indicated otherwise all bracketed material is added.

Defendant's motion directed to these claims is also moot.  Defendant's Memorandum at 1; Plaintiffs' Memorandum at 5, 8 (referencing the Amended Complaint's "removal" of Counts IV and V and stating the court should dismiss Defendant's motion as to Count IV as moot).  The court therefore directs its consideration, in the order presented in Defendant's Reply (Dkt. 15), to Plaintiffs' Count II alleging negligence *per se* based on Plaintiffs' reference to § 225, and Count I (negligence) insofar as it has been amended to add a request for punitive damages, which remain the subjects of Defendant's motion, and Defendant's request to strike Plaintiffs' Exhibits 1-5.

1.  <u>Plaintiffs' Count II (Negligence *Per Se*)</u>.

As noted, Plaintiffs' Count II has been amended to allege Defendant's negligence *per se* based on Defendant's failure to comply with § 225 and the relevant ~~provisions~~ regulations promulgated pursuant to § 225 as stated in 10 N.Y.C.R.R. § 6-1.25(c) & (d) ("§ 6-1.25(c) & (d)") which requires the periodic chemical treatment and cleaning of spa pools, *i.e.*, hot tubs, within the scope of § 6-1.25(a) and warning signs required by 10 N.Y.C.R.R. § 6-1.25(e) ("§ 6-1.25(e)").  Dkt. 11-2 ¶ 27.  Also as noted, Facts, *supra*, at 4, Defendant contends New York law does not permit a negligence *per se* claim to be predicated solely on violation of an administrative regulation such as § 6-1.5(c), (d), or (e).[12]  Plaintiffs argue, nevertheless, that by referencing in Plaintiffs' Count II of the Amended Complaint, § 225 which authorizes the New York State Public Health and Planning Council ("the Public Health Council") to issue regulations constituting the New York State Sanitary Code for the purpose of preserving and improving public health, *see*

---

[12] § 6-1.25(a) requires spa pools or hot tubs to comply with 10 N.Y.C.R.R. § 6-1.25(b)-(e); § 6-1.25(b) limits the maximum water temperature for spa pools or hot tubs to 104°F and requires an alarm and automatic shut-off system.

N.Y. Pub. Health Law § 225[1], [4] ("the State Sanitary Code"), Count II sufficiently alleges a violation of § 225 based on Defendant's failure to properly inspect and maintain the hot tub thereby permitting the breeding of *Legionella* to which Plaintiffs were exposed while staying at Defendant's premises and thus, Plaintiffs sufficiently assert a claim of negligence *per se*. Plaintiffs' Memorandum (Dkt. 11) at 6. Defendant also contends, without authority, § 6-1.25(c) does not "apply to a private rental circumstance were [*sic*] the lessees were in exclusive control of the property . . .."). Dkt. 10-1 at 7 n. 3. Plaintiffs also assert § 6-1.25 is applicable to Defendant's hot tub as the Amended Complaint alleges. Dkt. 11 at 6 n. 1 (citing *Rainbow Beach Ass'n v. New York State Dep't of Health*, 590 N.Y.S.2d 561, 563 (3d Dep't 1992) (State Sanitary Code applicable to private beach operated by homeowners association) (citing former 10 NYCRR 6-2.3[a] exempting beaches "owned and maintained by an individual for the use of his family and friends."))).

As alleged by Plaintiffs, the State Sanitary Code requires maximum temperature controls, minimum pH and chlorination (anti-bacteria) levels and periodic, bi-weekly draining and cleaning schedules for spa pools such as the hot tub provided by Defendant for Plaintiffs' use while staying at Defendant's premises. Dkt. 12 ¶ 27 (referencing § 6-1.25(a)-(d)). In Plaintiffs' Count II, Plaintiffs allege Defendant's failure to comply with § 225 which authorizes the State Sanitary Code, including § 6-1.25(a)-(e), constitutes negligence *per se* thereby eliminating Plaintiffs' obligation to prove Defendant's failure constituted negligence which proximately caused Plaintiffs' Legionnaires disease and injuries and Morris's death, and rendering irrelevant any possible contributory or comparative negligence by Plaintiffs. *See Conte v. Large Scale*

*Development Corp.*, 176 N.E.2d 53, 57 (N.Y. 1961) (plaintiff's contributory negligence irrelevant where defendant's negligence was *per se).* The parties do not further address the applicability of § 6-1.25 to Defendant's hot tub as pleaded in Plaintiffs' Count II. However, as relevant and contrary to Defendant's assertion that § 6-1.25 does not apply where lessee-users are in "exclusive control of the property," Dkt. 10-1 at 7 n. 3, 10 N.Y.C.R.R. § 6-1.3(a)(1) ("§ 6-1.3(a)(1)") states that the "requirements of this Subpart [which includes § 6-1.25] shall apply to all swimming pools except (1) a swimming pool . . . owned and/or maintained by an individual for use of his family and friends."  Under 10 NYCRR § 6-1.2(a), a swimming pool is defined as "a structure . . . intended for bathing . . .," and 10 NYCRR 6-1.2(c) defines as a spa pool "a swimming pool, primarily designed for therapeutic use or relaxation, which is normally not drained, cleaned or refilled for each individual . . . [and] may include . . .  hydrojet circulation, hot water, cold water, mineral bath, air induction, bubbles or any combination thereof.  Spa pools are shallow in depth and are not designed for swimming or diving."  Thus, nothing in the applicable provisions of the State Sanitary Code excludes hot tubs located on premises where the lessees are in "exclusive control" as Defendant asserts, and Defendant points to no New York statute or caselaw supporting such an exclusion.

Plaintiffs specifically allege that Defendant's "hot tub" constituted a "spa pool[ ]," Dkt. 12 ¶ 27, which was not maintained in accordance with § 225 and § 6-1.25(c) of the State Sanitary Code.  Insofar as § 6-1.25(c) is inapplicable to spa pools or hot tubs owned by individuals for their private use by "family and friends", *see* 10 NYCRR § 6-1.3(a)(1), and as the Amended Complaint alleges Plaintiffs were Defendant's "invitees" and "guests," Dkt. 12 ¶¶ 10-11, the Amended Complaint does not unambiguously allege

that Plaintiffs' use of Defendant's hot tub was not within § 6-1.3(a)(1)'s exclusion for a

hot tub's use solely for the private use of the owner's "family and friends."  Accordingly

whether Plaintiffs' presence on Defendant's premises was based on a commercial

relationship with Defendant such as a bed and breakfast or as vacation guests for a fee,

or a social relationship such as "friends" of Defendant staying as Defendant's guests or

social invitees without fee is not clear.  However, on a motion to dismiss, all inferences

are to be drawn in favor of the non-moving party.  *Elias v. Rolling Stone LLC*, 872 F.3d

97, 104 (2d Cir. 2017) (on motion to dismiss under Rule 12(b)(6), the complaint is to be

liberally construed, with all factual allegations in the complaint accepted as true, and all

reasonable inferences drawn in the plaintiff's favor).  Although the Amended Complaint

does not specifically refer to Defendant's premises or the Lakehouse as a commercial

inn, resort or rental property for vacationers, read as a whole it reasonably alleges the

Lakehouse is a type of facility operated by Defendant at which Plaintiffs stayed as

business or commercial, not as social, invitees, *i.e.*, Plaintiffs were not present at the

Lakehouse because they were Defendant's "family" or "friends." *See* Dkt. 12 ¶ 10

(Plaintiffs "were invitees of John Booth at the Lakehouse"), ¶ 11 ("During [Plaintiffs' stay]

John Booth "furnished guests of the property with showers, faucets, and other water

systems . . ."), ¶ 21 ("as owner and operator of the premises, Defendant owed a duty to

exercise due care for his guests by ensuring that the premises and the amenities were

reasonably safe for use by members of the public . . ."); ¶ 22 (Defendant had a duty "to

exercise due care in the maintenance of the water systems so as not to subject guests

to unreasonable risks of harm."); ¶ 23(c) (Defendant failed "to properly train and

supervise his employees" in the proper care and maintenance of the [premises] water

systems . . . "to recognize the presence of *Legionella* bacteria . . .").  In fact

Defendant's unsupported contention that Plaintiffs were the "exclusive <u>lessees</u>" of the

Lakehouse during the period of Plaintiffs' stay there, as a supposed exclusion to the

requirements of § 6-1.25, *see* Dkt. 10-1 n. 7, effectively concedes Plaintiffs' relationship

to Defendant's premises was commercial and not exclusively social.[13]  Accordingly, the

court infers that the Plaintiffs' Count II alleges that Plaintiffs' presence on Defendant's

premises was based on a commercial rental making Plaintiffs Defendant's business

invitees and not social invitees or Defendant's "friends" so as to exclude § 6.125(c)'s

applicability to Defendant's hot tub as alleged in the Amended Complaint.  Such

construction is also consistent with Defendant's contention that negligence *per se* under

New York law precludes reliance solely on an administrative regulation which

presupposes the applicability of § 6.125(c) to the case.[14]  The court therefore turns to

the merits of Defendant's challenge to Plaintiffs' Count II charging Defendant with

negligence *per se*.

Negligence *per se* constitutes "negligence as a matter of law . . . and the

plaintiff's contributory negligence, if there was any, is no defense."  *Conte*, 176 N.E.2d

at 53, 57 (quoting *Schumer v. Caplin*, 150 N.E. 346 (N.Y. 1925)).  Under well-

established New York law, the alleged "violation of a rule of an administrative body,

lacking the force and effect of a legislative enactment, 'did not establish negligence per

se but was simply <u>some</u> <u>evidence</u> of negligence . . .."  *Id.*  Assuming a statute is

applicable to the alleged conduct obviating the need for proof of negligence, the

---

[13]  The court also takes judicial notice that Defendant advertises the Lakehouse as a vacation property for rent (*see* VRBO Vacation <u>Rental</u> <u>By</u> <u>Owner</u>" Listing No. 267639 at <u>https://vrbo.com/267639</u>.

[14]  Following discovery the evidence may conceivably require a different result.

violation of which constitutes negligence *per se*, the plaintiff must nevertheless establish that the violation was the proximate cause of plaintiff's injuries. *See* N.Y. Jur. 2d Negligence § 101.  The distinction between a statutory violation constituting negligence *per se* and violations of administrative regulations or municipal ordinances as only evidence of negligence for consideration of the fact-trier, arises from the enhanced legal status of legislative enactments in contrast to the greater potential for variations in administrative rule- making such that more judicial weight is extended to legislative prohibitions thus allowing a defendant's negligence to be predicated solely on the defendant's violation of the statute.  *See Elliott v. City of New York*, 747 N.E.2d 760, 762 (N.Y. 2001).  Plaintiffs' reliance, Dkt. 11 at 6, on the enabling statute, § 225, for the State Sanitary Code, to support their contention that a violation of § 6.125(c) is the legal equivalent to a violation of § 225 for negligence *per se* is without merit.

In *Long v. Forest-Fehlhaber*, 433 N.E.2d 115, 118 (N.Y. 1982) the New York Court of Appeals held that violations of statutory work-place "specific safeguards" established by the first five subdivisions of N.Y. Labor Law § 241[1]-[5] (McKinney's 1989) ("§ 241[ ]"), support negligence *per se*; however, an alleged violation of a generalized statutory provision, § 241[6], relating to the same subject matter requiring implementation of specific safeguards for work place safety by the state Board of Standards and Appeals does not constitute negligence *per se*.  *See Long*, 433 N.E. 2d at 118 (comparing N.Y. Labor Law § 241[6] and N.Y. Labor Law § 200[1], which require administrative regulations to provide for specific construction site safety of standards).  Similarly, by its terms, § 225 authorizes the Public Health Board to promulgate specific regulations as part of the State Sanitary Code to promote public health.  *See* § 225[1],

[4].  Importantly, nowhere in the text of § 225 is there any reference to sanitary requirements for "spa pools" or hot tubs; such specifics are instead are established by § 6-1.25, a State Sanitary Code regulation adopted administratively under the authority of § 225, but not as an enactment by the state legislature itself.  To adopt Plaintiffs' construction of § 225 would therefore erase the distinction consistently drawn by the New York Court of Appeals between legislative enactments establishing specific standards of conduct to protect the public, violations of which constitute negligence as a matter of law, *i.e., per se*, and those statutes like § 225, *see, e.g., Long*, 433 N.E.2d at 118, authorizing administrative agencies, in this case, the Public Health Board, to promulgate such standards implementing the general objective of the enabling statute, violations of which constitute merely evidence of negligence thus retaining a plaintiff's comparative negligence as relevant to the claim.  *See Conte*, 433 N.E.2d at 57.

Plaintiffs' reliance, Dkt. 11 at 6, on *Aerated Products Co. of Buffalo v. Godfrey*, 48 N.E.2d 275, 277, 279 (N.Y. 1943) ("*Aerated Products*"), for the proposition that the State Sanitary Code has the "force and effect of law," *Aerated Products Co. of Buffalo,* 48 N.E.2d at 279, by virtue of its enabling statute, *i.e.,* § 225, is also unavailing. Plaintiffs are correct that in *Aerated Products* the court stated that the State Sanitary Code has the force of law based on § 225, its enabling act, *see also* N.Y. Pub. Health Law § 229 *McKinney's 1973) (State Sanitary Code has "force and effect of law," violations of which are punishable by fine and imprisonment) ("§ 229"); however, Plaintiffs' reliance fails to distinguish between the legal effect of an administrative regulation and its enabling act as relevant to the requirements for a claim of negligence *per se* –  both may have the "force and effect of law," but only an act of the legislature is

15

a statute the violation of which (if it also provides for specific standards of conduct, as relevant, for public health protection) under prevailing New York law may support a claim of negligence *per se*. *See Long*, 433 N.E.2d at 118 (violations of regulations promulgated pursuant to § 241[6] cannot support negligence as a matter of law); *see also Elliott*, 747 N.E.2d at 763 ("a declaration that . . . an administrative rule or regulation has the force of law does not make it so, if by that is meant it is the equivalent of or equal to legislative enactment.") (quoting *Schumer*, 150 N.E. at 140(internal quotation marks omitted))). Plaintiffs do not provide any other authority for Plaintiffs' contention which, as discussed, Discussion, *supra*, at 13-15, elides the relevant distinction, mandated by controlling New York law, between regulations establishing specific standards of conduct, and violations of statutes such as § 225 which do not, as a basis for negligence *per se*, and the court's research reveals none. Accordingly, Plaintiffs' Count II fails to plausibly state a negligence *per se* claim and Defendant's motion to dismiss directed to this claim should be GRANTED.

2.      Plaintiffs' Count I (Punitive Damages).

Defendant contends Plaintiffs' request for punitive damages, Plaintiffs' Count V repleaded in Plaintiffs' Count I of the Amended Complaint alleging negligence, is implausible and insufficient. Defendant's Memorandum at (Dkt. 10-1) 11 ("plaintiffs have not alleged any acts . . . by [Defendant] that rise to the level of moral culpability to warrant punitive damages") (citing *In the Matter of New York City Asbestos Litig.*, 678 N.E.2d 467 (N.Y. 1997); and *Conway v. Brooklyn Union Gas Company*, 592 N.Y.S.2d 782 (2d Dep't. 1993)); Defendant's Reply at 4 (Dkt. 15 at 8-10) (citing *Marinaccio v. Town of Clarence*, 986 N.E.2d 903 (N.Y. 2013); *Tevdorachvili v. The Chase Manhattan*

*Bank*, 103 F.Supp.2d 632 (E.D.N.Y. 2000); and *Perlman v. Friedman Alpren & Green LLP*, 750 N.Y.S.2d 869 (1st Dep't 2002)).  Plaintiffs' Count I alleges that during Plaintiffs' seven-day stay at Defendant's facility Plaintiffs were exposed to the *Legionella* bacteria present in Defendant's water systems and, particularly, in the hot tub, which were ingested or inhaled by Plaintiffs.  Dkt. 12 ¶¶ 10-13.  In support of Plaintiffs' punitive damages request,[15] Plaintiffs also allege that despite knowing that failure to properly inspect and maintain the hot tub could permit the growth of *Legionella*, Defendant failed to (1) adequately inspect and test the hot tub for *Legionella* prior to Plaintiffs' stay, (2) maintain the hot tub . . . as to prevent the propagation of *Legionella*, (3) maintain proper schedules ("protocols") and reports regarding the safe condition of Defendant's water systems including the hot tub at the premises to prevent the formation of *Legionella* bacteria in such systems, (4) provide notice to Defendant's guests of the presence of *Legionella* in the hot tub and "the risk of exposure," to this disease, and (5) "adhere to strict remediation protocol . . . to prevent further colonization of *Legionella* bacteria" in such water systems.  Amended Complaint ¶ 24a-e.  Defendant's opposition to Plaintiffs' request for punitive damages rests on the asserted inadequacy of these allegations to plausibly satisfy the heightened degree of a defendant's malfeasance required under New York law to justify punitive damages including that the conduct be not only tortious, but egregious and directed to the plaintiff and the public as well.  *See New York Marine*

---

[15]  Plaintiffs' Count I requests punitive damages based on Defendant's negligence, *see* Dkt. 24; Plaintiffs' Count II realleges Amended Complaint ¶¶ 1-25.  The court therefore construes the Amended Complaint as also seeking punitive damages under Count II based on Defendant's alleged negligence *per se* in accordance with the requirement that on motions to dismiss complaints be given liberal construction.  *See Elias*, 872 F.3d at 104 (on motions to dismiss complaints all factual allegations to be accepted as true and given liberal construction).  As the court finds Count II should be dismissed, the court need not consider whether under New York law such a claim may support punitive damages, a question not addressed by the parties.

*& General Insur. Co. v. Tradeline (LLC)*, 266 F.3d 112, 128 (2d Cir. 2001) (citing *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995)). As noted, Discussion, *supra*, at 7, allegations are plausible where "the factual content allows the court to draw the <u>reasonable</u> inference that the defendant is liable for the misconduct alleged," *Sykes*, 723 F.3d at 403 and raises the "right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. "Well-pleaded allegations must nudge the claim 'across the line from conceivable to plausible.'" *Young-Gibson v. Patel*, 957 F.Supp.2d 269, 270 (W.D.N.Y. 2013) (quoting *Twombly*, 550 U.S. at 570). Here, Plaintiffs allege in detail the circumstances under which they became infected with the *Legionella* bacteria alleged by Plaintiffs to have been then contaminating the hot tub and Defendant's water system used by Plaintiffs while at Defendant's Lakehouse. *See* Amended Complaint ¶¶ 11-16, 23(a)-(i), 24(a)-(e). Further, Plaintiffs allege Defendant was under a duty, as a commercial operator of the property, to properly chemically disinfect and clean the hot tub in accordance with the State Sanitary Code, § 6-1.25(c), (d), as to prevent such contamination and infection resulting in a highly serious form of sometimes fatal pneumonia. *See Id.* ¶ 28. The susceptibility of untreated hot-tubs used by the public to *Legionella* growth and resulting serious infection, hospitalization and potential death from use of or exposure to such hot tubs is well-known. *See* Legionnaires' disease, https://www.cdc.gov/legionella, U.S. Dep't. of Health and Human Resources, Centers for Disease Control and Prevention.[16]

---

[16] Courts may take judicial notice of excerpts from U.S. government publications on motions to dismiss. *See Okoi v. El Al Israel Airlines,* 378 Fed.Appx. 9, n. 1 (2d Cir. 2010).

In addition to Plaintiffs' allegations that Defendant failed to exercise due care with respect to the maintenance of Defendant's water system and the hot tub, *see* Amended Complaint ¶¶ 10, 11, 21, 22, 23(a), Plaintiffs also allege in support of Plaintiffs' punitive damages request that Defendant, with knowledge of the associated risks, failed to properly test the hot tub for *Legionella* prior to Plaintiffs' stay, prevent the propagation of *Legionella* during Plaintiffs' stay, maintain proper schedules for testing and treating Defendant's water systems, including the hot tub on Defendant's property, to prevent the formation of *Legionella* and provide notice to Defendant's guests as to the presence of the bacteria in Defendant's hot tub as required by the State Sanitary Code. *See* Amended Complaint ¶¶ 24(a)-(e); ¶ 27. The Amended Complaint also alleges Plaintiffs were diagnosed with Legionnaires' disease shortly after their departure[17] from the Lakehouse, Dkt. 12 ¶¶ 14-16, with symptoms of the disease including shortness of breath, chills, nausea, chest pain, headaches, fever, and vomiting which arose within the *Legionella's* incubation period – two to 10 days – after Plaintiffs' exposure and which eventuated in Plaintiffs' hospitalization and Morris's death. *Id.* ¶ 17.

Under New York law punitive damages must be based on evidence showing defendant's conduct "manifest[ed] spite or malice, or a fraudulent or evil on the part of the defendant, or such a conscious and deliberate disregard of the interest of others that the conduct may be called willful or wanton." *Marinaccio*, 986 N.E.2d at 906. Gross negligence in the maintenance of spa hot tubs has been recognized as supporting punitive damages where public users of a hot tub contract Legionnaires'

---

[17]  Plaintiffs stayed at the Lakehouse from August 29 to September 4, 2016 (Dkt. 12 ¶ 10); Hopkins's symptoms first appeared on September 4, 2016, Morris's on September 5, and DiSalvo's on September 6, 2016. Dkt. 12 ¶¶ 14-16.

disease.  *See Silivanch v. Celebrity Cruises, Inc.*, 171 F.Supp.2d 241, 266 (S.D.N.Y. 2001).  Given the well-known risks associated with improperly maintained hot tubs provided to vacationers by commercial resorts, *id.*, for contamination with the *Legionella* bacteria, and the well-documented and publicized by the federal government risk of serious and potentially fatal infection and illness warranting State Sanitary Code detailed regulations, specifically applicable to hot tubs available for public use, it is not an unreasonable inference to find that Plaintiffs' allegations plausibly allege gross negligence by Defendant, as a commercial operator of a vacation property providing a hot tub amenity for guests subject to the State Sanitary Code, with respect to the presence of *Legionella* in Defendant's water system without proper remediation and Plaintiffs' use and exposure to water vapor from Defendant's hot tub contaminated with the bacteria during Plaintiffs' stay at Defendant's premises.  A defendant's failure, as an operator of a vacation rental property, to periodically test a hot tub available for public use and to timely detect and treat water contaminated by *Legionella* in violation of the State Sanitary Code, violations of which are considered by the state Legislature to be punishable by fine or imprisonment, *see* § 229, as evidence of Defendant's negligence, *see* Discussion, *supra,* at 13 (citing caselaw that violations of state regulations constitute evidence of negligence) would therefore reasonably support finding an indifference to public health rising to gross negligence thereby warranting punitive damages.  *See Wilburn v. City of Albany*, 2014 WL 2532477, at *2 (W.D.N.Y. June 5, 2014) ("at the motion to dismiss stage it is not [ ] [plaintiff's] burden to provide evidence demonstrating that punitive damages are merited . . ., [plaintiff] is merely required to make plausible allegations which, if true, would support a claim for punitive damages.")

(citing *Ellis v. Cohen & Slamowitz, LLP*, 701 F.Supp.2d 215, 218 (N.D.N.Y. 2010)). *See also Tevdorachvili*, 103 F.Supp.2d at 644 ("[T]he difference between 'negligence' and 'gross negligence' is one of fact, not law.") (citing *Food Pageant v. Consolidated Edison Co.*, 429 N.E.2d 738, 740 (N.Y. 1981))

Defendant's reliance, Dkt. 10-1 at 10-11; Dkt. 15 at 9, on cases as *In the Matter of New York City Asbestos* Litig., 768 N.E.2d 467, 468 (N.Y. 1997) (*"Matter of New York City"*); *Tevdorachvili*, 103 F.Supp.2d at 644-45 ("*Tevdorachvili*"); *Marinaccio v. Town of Clarence*, 986 N.E.2d 903, 906 (N.Y. 2013) ("*Marinaccio*"); *Conway v. Brooklyn Union Gas Co.*, 592 N.Y.S.2d 782, 783 (2d Dep't. 1993) ("*Conway*"); and *Perlman v. Friedman Alpren & Green* LLP, 750 N.Y.S.2d 869 (1st Dep't. 2002) ("*Perlman*"), does not require a different conclusion. Indeed, when compared to the facts of the instant case, Defendant's cited cases support Plaintiffs' punitive damages claim. For instance, in *In the Matter of New York City,* the courts dismissed plaintiffs' punitive damage award because plaintiff's pleading showed defendant's lack of specific awareness that plaintiffs may contract cancer by long term exposure to asbestos which thereby prevented defendant from providing plaintiffs with timely warnings. Here, Plaintiffs allege the risk of contracting Legionnaires' disease on account of Defendant's failure to properly inspect and maintain the hot tub was immediate leading to the actual presence of *Legionella* during Plaintiffs' stay at Defendant's premises, not long-term or problematic, unlike the facts in *In the Matter of New York* City, and Plaintiffs allege Defendant knew of such risk to Plaintiffs' health caused by Plaintiffs' exposure to the presence of *Legionella* in the hot tub. In *Tevdorachvili*, the court found that dismissal of plaintiff's punitive damages claim based on defendant's failure to stop a forged check from being

drawn against plaintiff's checking account did not demonstrate defendant's neglect was the result of gross negligence or "wanton dishonesty," 103 F.Supp.2d at 644-45, sufficient to support punitive damages, particularly given that New York law did not allow for punitive damages in such cases. *Id.* at 45 (citing cases). Here, in stark contrast, Plaintiffs allege a serious and substantial danger to public health, including Plaintiffs' serious injuries and Morris's death, was caused by Defendant's gross negligence based on Defendant's failure to heed known risks associated with improperly maintained, required by specific provisions of the State Sanitary Code, hot tubs contaminated by *Legionella*. Likewise, in *Marinaccio*, defendant's alteration of water drainage patterns adjacent to plaintiff's property causing flooding and the breeding of mosquitos and presence of frogs on plaintiff's land, while supporting plaintiff's trespass claim, did not support punitive damages as defendant's ineffective efforts to avoid the unpermitted flows, although negligent, did not result from defendant's malice or gross indifference to plaintiff's alleged injuries. *Marinaccio,* 986 N.E.2d at 906. Here, again, such miscalculations causing mere property damage and inconvenience to a plaintiff dramatically differs from the alleged gross oversights alleged and the resultant significant personal injuries and death suffered by Plaintiffs from a dangerous disease. Similarly, in *Conway*, plaintiff's punitive damages request was struck where plaintiff did not allege (or demonstrate) that the asbestos contamination caused by defendant's neglectful installation of a new gas heating and hot water system in plaintiff's home "might develop into cancer" thereby supporting plaintiff's mental distress claim and thus defendant's conduct, even if negligent, did not show "a high degree of moral culpability." *Conway*, 592 N.Y.S.2d at 783. Also, in contrast to

*Conway*, here Plaintiffs allege Defendant "<u>knew</u> or should have known," Amended

Complaint ¶ 23, Defendant's proper inspection and testing of Defendant's water system

and hot tub for *Legionella* bacteria, in compliance with the State Sanitary Code which,

as Plaintiffs allege, would have revealed the presence of *Legionella*, and Defendant's

failure to do so resulted in Plaintiffs' injuries and Morris's death from the Legionnaires'

disease infection contracted by Plaintiffs' use of or exposure to the hot tub.  In the

present case, Plaintiffs allege Defendant's hot tub was in fact contaminated by

*Legionella*, Plaintiffs actually contracted Legionnaires' disease as a result, and

Defendant knowingly ignored these risks by failing to properly inspect and maintain the

hot tub in violation of the State Sanitary Code.  In *Perlman*, an action for economic

damages based on fraud was, on the evidence presented, insufficient to establish the

requisite degree of willful and wanton behavior to support punitive damages.  By

comparison, Defendant's disregard for a significant health risk as alleged in this case

could plausibly satisfy this requirement.  A defendant's awareness that the public's use

of hot tubs "presented increased risk of illness <u>including</u> <u>Legionnaires'</u> <u>Disease</u>,"

*Silivanch*, 171 F.Supp.2d at 262, coupled with a defendant's knowledge that insufficient

treatment of a hot tub available to the guests at a commercial resort facility or vacation

rental property would facilitate the presence of *Legionella* bacteria in circumstances

where defendant failed to avoid such risk constitutes wanton misconduct supporting

punitive damages.  *See id.*  Unlike the cases Defendant relies upon, here Plaintiffs

clearly allege Defendant "knew" or "should have known" of similar risks yet failed to

avoid them by performing required periodic inspection, treatment and cleaning of the hot

tub, resulting in Plaintiffs' injuries and, as to Morris, a fatal Legionnaires' disease

infection.  Amended Complaint ¶ 23.  Significantly, Plaintiffs also allege Defendant failed

to warn users of Defendant's deficient inspections and maintenance and the resultant

presence of *Legionella*.  *See* Amended Complaint ¶ 23(e); ¶ 24(d).  The risks to public

health presented by the facts in the cases relied on by Defendant are either non-

existent or pale when compared to Plaintiffs' allegations of the degree of Defendant's

culpability based on the facts alleged by the Amended Complaint plausibly

demonstrating the required degree of gross negligence and wanton disregard for

Plaintiffs' (and the public's) health in support of punitive damages in the instant case.

Other cases involving negligence and punitive damages claims based on *Legionella*

support this conclusion.  *See, e.g., Taylor v. Aria Resort & Casino, LLC*, 2015 WL

751360, at *3 (D.Nev. Feb. 23, 2015) ("routine test[ing] for the bacteria" and "many

measures" such as "heat and flush" taken by resort to prevent *Legionella* before and

during period when *Legionella* discovered in hotel's water system precludes punitive

damages); *Clegg v. Bray & Gillespie III Management, LLC*, 2008 WL 2695569, at *3

(M.D. Fla. July 2, 2008) ("insufficient sanitizing, low chemical levels and slow flow" for

defendant hotel's swimming pool and spas from which plaintiffs contracted Legionnaires

disease precluded summary judgment on defendant's "duty to maintain its premises in a

reasonably safe condition for invitees"); *Flaherty v. Legum & Norman Realty, Inc.*, 2007

WL 4694346, at *12 (D.Va. Jan 4, 2007) (absence of state or local regulations and

admissible expert opinion establishing particular requirements for proper maintenance

of condominium's water source causing fatal *Legionella* infection precluded plaintiff's

negligence claim against property  manager), *aff'd*, 281 Fed.Appx 232 (4th Cir. June 11,

2008).

In sum, Plaintiffs' allegations, if true, plausibly demonstrate the existence of evidence supporting as a reasonable inference that the hot tub was not treated or cleaned by Defendant as required, allowing the formation of *Legionella* to which Plaintiffs were exposed, causing Legionnaires' disease resulting in Plaintiffs' infections and Morris's death. As such, Plaintiffs' punitive damage allegations show "more than a sheer possibility that . . . [d]efendant . . . acted unlawfully," *Iqbal*, 556 U.S. at 678, in a grossly negligent manner sufficiently demonstrating Plaintiffs' request is plausible. Accordingly, the Amended Complaint plausibly alleges that punitive damages are warranted in this case. *See Wilburn*, 2014 WL 2532477, at *2 (at pleading stage, plaintiff only required to state a plausible basis for punitive damages, not actual evidence to support the claim, even though such allegations may not be substantiated on a "fuller record"). Defendant's motion directed to Plaintiffs' punitive damages claim included in Plaintiffs' Count I of the Amended Complaint should therefore be DENIED.

3.    Defendant's Motion to Strike.

As noted, Facts, *supra*, at 5, Defendant moves to strike Plaintiffs' Exhibits 1-5 as not referenced in the Amended Complaint. The court has well-established authority to strike improperly filed papers. *See In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litig.*, 763 F.Supp.2d 423, 581 (S.D.N.Y. 2011) (quoting *Sierra v. United States*, 1998 WL 599715, at *9 (S.D.N.Y. Sept. 9, 1998)). Here, the exhibits at issue include the Declaration of Jules Zacher, Esq., Plaintiffs' attorney, describing the Plaintiffs' Exhibits 2-5. Plaintiffs' Exhibit 2 purports to be a printout of chemical readings obtained by the New York State Department of Health indicating the presence of *Legionella* in Plaintiffs Hopkins and DiSalvo after staying at Defendant's property;

Plaintiffs' Exhibit 3 is a copy of a New York State Department of Health letter dated September 29, 2016 to Defendant advising of the suspected presence of *Legionella* in Defendant's water systems at Defendant's Lakehouse facility and recommending responsive measures. Plaintiffs' Exhibit 4 is a copy of Morris's death certificate indicating *Legionella* pneumonia as a contributing cause of decedent's death. Plaintiffs' Exhibit 5 is a copy of the Amended Complaint. Although Exhibits 2-4 are documents that would undoubtedly become potential evidence in the case through discovery and may have been relied upon by Plaintiffs, see *Kalyanaram*, 742 F.3d at 44 (court may consider documents "of which plaintiff had knowledge and relied on in bringing suit"), in preparing the Amended Complaint, as they are not specifically incorporated or referenced in the Amended Complaint, and Plaintiffs do not specify such reliance, they should be stricken at this time. As the Zacher Declaration itself describes each of these exhibits, it also should not be considered in determined the sufficiency of the pleadings and therefore should be stricken for the same reason. Had Plaintiffs genuinely believed these documents should be included in the pleadings, or available to defend against a Rule 12(b)(6) motion, Plaintiffs should have thought to incorporate them into the Amended Complaint or specifically indicated in opposition to Defendant's request the exhibits were relied upon in drafting the Amended Complaint; Plaintiffs did neither. However, as Exhibit 5 is a copy of the Amended Complaint, its arguable impropriety as an exhibit in opposition to Defendant's motion is obviated and thus moot as the Amended Complaint was properly filed as a pleading pursuant to Rule 15(a)(1)(B). Accordingly, Defendant's request/motion to strike should be GRANTED as to Plaintiffs'

Exhibit 1 – 4; as to Plaintiffs' Exhibit 5, Defendant's request/motion to strike should be DISMISSED as moot.

## CONCLUSION

Based on the foregoing, Defendant's motion to dismiss (Dkt. 10) as to Plaintiffs' *per se* negligence claim in Count II should be GRANTED; Defendant's motion as to Plaintiffs' Counts III and IV should be DISMISSED as moot; Defendant's motion directed to Plaintiffs' Count I of the Amended Complaint requesting punitive damages should be DENIED. Defendant's request/motion to strike should be GRANTED as to Plaintiffs' Exhibit 1 – 4; as to Plaintiffs' Exhibit 5, Defendant's request/motion should be DISMISSED as moot. The Defendant's should be directed to answer the Amended Complaint, and the matter should be remitted to the undersigned for further proceedings.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

SO ORDERED as to
Defendant's request/motion to strike.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: November 20, 2017
       Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 20, 2017
                 Buffalo, New York