UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COLLEEN HOPKINS,
KATHRYN DiSALVO,
DOUGLAS MORRIS, Executor of the
Estate of Margaret Morris,
                     Plaintiffs,

    v.

JOHN S. BOOTH, III,
                     Defendant.
_____

**DECISION
and
ORDER**

**16-CV-1020V(F)**

APPEARANCES:      JULES ZACHER, P.C.
                          Attorneys for Plaintiffs
                          JULES ZACHER, of Counsel
                          1601 Walnut St., Suite 707
                          Philadelphia, Pennsylvania 19102

                          BURGETT & ROBBINS
                          Attorneys for Plaintiffs
                          ROBERT A. LIEBERS, of Counsel
                          15 E. Fifth Street
                          Jamestown, New York 14701

                          GOLDBERG SEGALLA LLP
                          Attorneys for Defendant
                          JOSEPH J. WELTER,
                          JASON BOTTICELLI, of Counsel
                          665 Main Street, Suite 400
                          Buffalo, New York 14203


      In this diversity action alleging negligence, and a wrongful death claim, based on

Plaintiffs, including decedent Margaret Morris, contracting Legionnaire's Disease from

exposure to Legionella bacteria emanating from a hot-tub at Defendant's vacation lodge

at which Plaintiffs stayed as Defendant's guests,[1] Defendant, by papers filed September 6, 2019 (Dkt. 57), moves to compel responses to document requests including bank records, credit statements, medical records including urine tests of Plaintiff Colleen Hopkins ("Plaintiff Hopkins" or "Hopkins"), certain photographs in Hopkins's possession, and a September 23, 2016 text message from Plaintiff Hopkins to her sister, Plaintiff Kathryn DiSalvo ("Plaintiff DiSalvo" or "DiSalvo"), which Plaintiffs assert is protected from disclosure by the attorney-client privilege ("the September 23, 2016 Text Message" or "the text message"). The parties also dispute whether Defendant was entitled to continue Plaintiff Hopkins's deposition without service of another formal deposition notice by Defendant. The matter was fully briefed, Dkts. 57, 61, 62, and oral argument scheduled for October 1, 2019 (Dkt. 60). However, prior to the oral argument, the parties advised the court telephonically that they had resolved all the discovery issues raised by Defendant's motion except whether the September 23, 2016 Text Message was privileged under the attorney-client privilege and had, despite Hopkins's communication of the text message to DiSalvo, remained so under the common interest doctrine, and requested the court resolve this issue on the papers submitted without oral argument. Dkt. 67. The parties' request was granted subject to an *in-camera* inspection of the text message and the possible need for further affidavits, and oral argument was cancelled. *Id.* Subsequently, on October 1, 2019, the court ordered Plaintiffs to submit a copy of the text message for an *in-camera* inspection. Dkt. 69. A copy of a screenshot of the September 23, 2016 Text Message was received from Jules

---

[1] Plaintiffs Hopkins and DiSalvo were hospitalized but recovered from their infections; Plaintiff Morris's decedent, Margaret Morris, Hopkins and DiSalvo's mother who had stayed with her daughters Hopkins and DiSalvo, did not.

2

Zacher, Esq., Plaintiffs' attorney ("Zacher") by the undersigned on October 3, 2019 (Dkt. 72). The therefore court proceeds to address whether the text message is or is not subject to production to Defendant under Plaintiffs' assertion of privilege.

In a diversity action, such as this, state law controls the availability of a privilege. *See* Fed.R.Evid. 501 ("[I]n a civil case, state law governs [a claim of] privilege regarding a claim or defense for which state law supplies the rule of decision.") (bracketed material added);[2] *see Egiazaryan v. Zalmayev,* 290 F.R.D. 421, 428 (S.D.N.Y. 2013) (citing *In re Am. Tobacco Co,* 880 F.2d 1520, 1527 (2d Cir. 1989) (citing *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975))). As applicable, under New York law, "evidence of a confidential communication made between the attorney . . . and the client in the course of professional employment, shall not be disclosed . . . nor shall the client be compelled to disclose such communication." *Id.* (quoting N.Y.C.P.L.R. § 4503(a)(1). The privilege extends to "'confidential communications between a lawyer and client relating to legal advice sought by the client.'" *Id.* (quoting *In re Nassau Cnty. Grand Jury Subpoena Duces Tecum dated June 24, 2003*, 830 N.E. 2d 1118, 1126 (N.Y. 2005)). To qualify for protection, "the communication itself must be 'primarily or predominantly of a legal character.'" *Id.* (quoting *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 540 N.E. 2d 703, 706 (N.Y. 1989). "'The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it [the communication] was made in order to render legal advice or services to the client.'" *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 581 N.E.2d 1055, 1061 (N.Y. 1991)). "The party asserting [the] privilege carries the burden to prove every element of the privilege."

---

[2] Unless indicated otherwise, bracketed material has been added.

*Egiazaryan,* 290 F.R.D.at 428 (citing *People v. Mitchell,* 448 N.E.2d 121, 123 (N.Y. 1983) (citing cases), and "that there has been no waiver." *Id.* (citing *John Blair Commc'ns, Inc. v. Reliance Capital Grp.*, 582 N.Y.S.2d 720 (1st Dep't 1992) (citation omitted). The requirements for application of the privilege are strictly construed. *See Madden v. Creative Services, Inc.*, 646 N.E.2d 780, 783 (N.Y. 1995) ("in that the attorney-client privilege is – like all privileges – a limitation on the truth-seeking process, the statutes [N.Y.C.P.L.R. § 4503] is strictly construed").

Here, in support of Defendant's motion, Defendant contends that as of September 23, 2016, Plaintiffs had not retained counsel and thus to the extent the text message may include a communication from Plaintiffs' attorney, Zacher, whom Plaintiffs eventually did retain and who commenced this action and presently represents Plaintiffs, such information was not conveyed during a professional relationship between Plaintiffs Hopkins and DiSalvo and Zacher and thus is not subject to the privilege. In particular, Defendant argues Plaintiff Hopkins did not formally retain counsel by executing a retainer agreement until September 26, 2016 and that Plaintiff DiSalvo did not do so until September 28, 2016 and, unlike Plaintiff Hopkins, who apparently initiated the contact with Zacher, DiSalvo had no communications with counsel prior to September 23, 2016. Dkt. 57-2 at 3. Defendant further maintains that with respect to Plaintiff DiSalvo even if she believed she was represented by Zacher prior to September 23, 2016, she took no action which would indicate she genuinely held such a belief. *Id.* at 3-4. Defendant further contends that even assuming both Plaintiffs had established an attorney-client relationship with Zacher prior to the September 23, 2016 Text Message, Plaintiffs cannot rely on the so-called common interest doctrine to avoid a

4

waiver of the privilege which, according to Defendant, occurred when Plaintiff Hopkins sent the September 23, 2016 Text Message to DiSalvo containing the putative privileged information, and upon which Plaintiffs relied in asserting the privilege in Plaintiffs' privilege log in response to Defendant's document production request which Plaintiffs refused prompting Defendant's motion.  Dkt. 57-2 at 4-6 (citing caselaw).

In response, Plaintiffs submit Defendant failed to comply with Fed.R.Civ.P. 37(a) ("Rule 37(a)"), requiring a good faith effort to avoid motion practice in a discovery dispute, execution of formal retainer agreements are not prerequisite to the existence of an attorney-client relationship and an assertion of the privilege, that Plaintiffs held a reasonable belief that they had engaged Zacher to represent them prior to September 23, 2016, and that the common interest doctrine is applicable to avoid waiver based on the text message as Plaintiffs had a common interest in pursuing Plaintiffs' joint negligence claims[3] with the same attorney in this case and, therefore, the text message does not constitute a waiver of the privilege.  Dkt. 61-2 at 3-6 (citing caselaw).  In Defendant's Reply, Defendant maintains Defendant complied with Rule 37(a)(1) through discussions with Plaintiffs' counsel about the discovery issues during Plaintiff Hopkins's deposition which were unproductive, Dkt. 62 at 5, and reiterates Defendant's contentions in opposition to Plaintiffs' asserted privilege.  *Id.* at 5-7 (citing caselaw)

Strict compliance with the requirements of Rule 37(a)(1) are not necessary where the court finds that extensive pre-motion efforts to avoid judicial intervention would be unavailing.  *See United States v. Aquest Transit LLC,* 319 F.R.D. 83, 89 (W.D.N.Y.

---

[3]  Plaintiffs' claims are of course not joint as each Plaintiff's negligence claims must be established separately albeit by similar if not identical evidence; however, Defendant has not moved to sever Plaintiffs' claims.

5

2017) (certification under Rule 37(a)(1) that movant has conferred or attempted to confer in good faith with person or party failing to provide requested discovery not required where record shows such an attempt to confer would be futile). Here, Plaintiffs' repeated refusal to yield on Plaintiffs' assertions with respect to the alleged privileged status of the September 23, 2016 Text Message demonstrates that Defendant's further efforts to resolve the issue without resorting to a motion in compliance with Rule 37(a) would have been futile. Accordingly, the absence of further efforts by Defendant to achieve greater compliance with Rule 37(a) is no bar to the court's consideration of the merits of Defendant's motion.

A formal retainer agreement is not prerequisite to the establishment of an attorney-client relationship sufficient to support invoking the privilege, *see Egiazaryan*, 290 F.R.D. at 429 ("'While the existence of the [attorney-client] relationship is not dependent upon the payment of a fee or an explicit agreement, a party cannot create the relationship based on his or her own beliefs or actions.'") (quoting *Pellegrino v. Oppenheimer*, 851 N.Y.S.2d 19, 24 (1st Dep't 2008). However, a "'preliminary consultation' when undertaken "'with a view toward retention'" of the client may be sufficient to attach the privilege. *Id.* (quoting *Pellegrino,* 851 N.Y.S.2d at 24 (quoting *Rose Ocko Found, Inc. v. Liebovitz*, 547 N.Y.S.2d 89, 90 (2nd Dep't 1989) (internal quotation marks omitted))). It is therefore possible that Hopkins's preliminary consultation with Zacher regarding representation, apparently by telephone, prior to sending the text message could qualify to establish the existence of an attorney-client relationship prior to September 26, 2016, which in turn would support extending the privilege to the text message assuming the content qualified as confidential information

incident to legal advice from Zacher. Under the common interest rule or doctrine, which "is not a separate privilege" but, rather, "'an extension of the attorney-client privilege,'" *see Egiazaryan*, 290 F.R.D. at 433 (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)), "'only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected.'" *Id.* at 242-43; *accord Am. Re-Ins. Co. v. U.S. Fid. Guar. Co.*, 837 N.Y.S.2d 616, 621 (1st Dep't 2007).

However, in this case, it is unnecessary to determine whether any attorney-client relationship had been established between Plaintiffs Hopkins and DiSalvo and Zacher prior to September 23, 2016, or whether, assuming such a relationship even existed, the requirements for application of the common interest rule were met to avoid a waiver of the privilege resulting from sending the text message, as upon a careful *in camera* examination of the actual text of the September 23, 2016 Text Message at issue, the court finds its contents limited primarily to information regarding the economic aspects of the Plaintiffs' putative fee and prospective retainer agreement with Zacher, *i.e.*, the customary one-third contingency fee and other unprivileged subject matter. It is well-established that such fee related information cannot qualify as a confidential communication to which the privilege may attach under New York law. *See Matter of Priest v. Hennessy*, 409 N.E.2d 983, 986 (N.Y. 1980) (Jasen, J.) ("The fee arrangements between attorney and client do not ordinarily constitute a confidential communication, and, thus are not privileged in the usual case."). As the court in *Priest* explained

> A communication concerning the fee to be paid has no direct relevance to the legal advice to be given. It is a collateral matter which, unlike

7

> communications which relate to the subject matter of the attorney's professional employment, is <u>not</u> privileged.

*Matter of Priest*, 409 N.E.2d at 986-87 (underlining added); *see also United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir. 1991) (citing *Matter of Priest*, 409 N.E.2d 983, 986-87 (N.Y. 1980)).  Here, the text message, rather than conveying any advice or direction from Zacher to Hopkins regarding how he expects to proceed in the case, or recommending to Plaintiffs how they should proceed in this case, the text message merely advises Plaintiff DiSalvo as to Zacher's required fee arrangement, and that one "John Sr." (not identified) will review the fee agreement.  Neither does Hopkins's bare reference in the text message to past or the need for prospective testing at Defendant's premises by Zacher's law firm, or Zacher's request that Plaintiffs expedite their decision to retain him to facilitate an early inspection of Defendant's premises, suggest or imply advice from Zacher of a legal nature that arguably qualifies as a protected confidential communication.  *Cf., Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 82, 105 (S.D.N.Y. 2002) (sustaining plaintiff's attorney-client privilege claim as to communications discussing specific scientific testing methods proposed by expert relevant to the legal proceedings).  Here, nothing in the text message discloses the need for such testing, its methodology or other evidentiary aspects necessary to support Plaintiffs' claims; it merely reiterates Zacher's request that this task be accomplished promptly.  Thus, Plaintiffs' assertion, without factual affidavits, submitted under seal, to elaborate on the details of Zacher's confidential communications with Hopkins, that the text message "contains legal advice," Dkt. 61-2 at 6, as is Plaintiffs' burden, is unsupported.  Accordingly, nothing in the text message qualifies it as a document which reveals a confidential communication with counsel

subject to the privilege even assuming, for the sake of analysis, an attorney-client relationship between Plaintiffs and Zacher regarding his possible representation of Plaintiffs had been established prior to September 23, 2016 on the basis of Hopkins's preliminary consultation with Zacher and as confirmed by her later execution of the retainer agreement.  Nor, therefore, is there any necessity to consider whether, assuming the privilege had attached, it was waived by the text message unless also protected against such a waiver pursuant to the common interest doctrine otherwise available under New York law.

## CONCLUSION

Based on the foregoing, Defendant's motion (Dkt. 57) is GRANTED.  Plaintiffs shall serve a copy of Plaintiff Hopkins's September 23, 2016 text message[4] upon Defendant <u>within</u> 10 <u>days</u>.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: October 8, 2019
       Buffalo, New York

---

[4] A copy of the text message has been filed under seal as a Court Exhibit to facilitate possible further judicial review.